ANDREW V. JABLON (SBN 199083)
E-Mail: ajablon@rpblaw.com
ALISA S. EDELSON (SBN 216269)
E-Mail: aedelson@rpblaw.com
RESCH POLSTER & BERGER LLP
1840 Century Park East, 17th Floor
Los Angeles, California 90067
Telephone: 310-277-8300
Facsimile: 310-552-3209

Attorneys for Plaintiffs 2045 Sawtelle I, LLC; and 2045 Sawtelle II, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| 2045 SAWTELLE I, LLC; AND 2045 SAWTELLE II, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> THE KINGDOM OF SAUDI ARABIA, doing business as THE ROYAL CONSULATE OF SAUDI ARABIA; AND DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. After the Kingdom of Saudi Arabia, doing business as the Royal Consulate of Saudi Arabia, ("**Consulate**" or "**Tenant**") failed and refused to pay the nearly three-quarters of a million dollars in rent payments due and owing under its lease for the property that Tenant formerly occupied at 2045 Sawtelle Blvd., Los Angeles, CA 90025 (the "**Premises**"), and as the Consulate further breached its lease by leaving the Premises damaged and strewn with trash, Plaintiffs 2045 Sawtelle I, LLC and 2045 Sawtelle II, LLC (collectively "**Plaintiffs**" or "**Landlord**") have no choice but to bring this action.

786744.2

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over all of the claims in this Complaint pursuant to 28 U.S. Code § 1330 because the action is against a foreign state, as defined in that title. Additionally, this Court has subject matter jurisdiction over all of the claims in this Complaint pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events giving rise to the claims occurred in this judicial district, and the Tenant's principal place of business is within this judicial district.

## THE PARTIES

4. Plaintiff 2045 Sawtelle I, LLC ("**Sawtelle I**") is a California limited liability company, with its principal place of business in Beverly Hills, California. Together with 2045 Sawtelle II, LLC ("**Sawtelle II**"), Sawtelle I is the owner of the Premises.

5. Plaintiff Sawtelle II is a California limited liability company, with its principal place of business in Beverly Hills, California. Together with Sawtelle I, Sawtelle II is the owner of the Premises.

6. As detailed below, The Kingdom of Saudi Arabia ("**KSA**"), operating as the Royal Consulate of Saudi Arabia, operated the consulate offices for the KSA in Los Angeles at the Premises from approximately April 1, 1995 through August 31, 2020.

7. Plaintiffs are unaware of the true names or identifies of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend its Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, and for Plaintiffs' injury as alleged in this Complaint. References hereinafter made to specifically named

defendants shall be deemed to refer to and include the fictitiously named defendants sued herein as DOES 1 through 10, inclusive, unless otherwise indicated.

8. Plaintiffs are informed and believe, and based thereon allege, that at all times herein relevant, each of the Defendants, including the DOE Defendants, was either an agent, representative, partner, alter ego and/or joint venturer of the other defendants and that each of said Defendants either participated in, planned, authorized, ratified, adopted and assisted in, conspired in, or acted as an accomplice to one or more of the various acts, omissions, and agreements alleged herein or is otherwise legally responsible therefor.

## GENERAL ALLEGATIONS

9. On or about January 23, 1994, Plaintiffs' predecessor-in-interest, Sawtelle Courtyard Partners L.P. (the "**Predecessor Landlord**"), on the one hand, and Tenant, on the other hand, entered into a Lease for the Premises, which was dated for reference purposes as of April 1, 1995 (the "**1995 Lease**"). Attached hereto as Exhibit 1 is a true and correct copy of the 1995 Lease. Plaintiff notes that case law and the United States government treats consulates, permanent missions, and embassies as the foreign state that they represent, and not a separate legal entity. Accordingly, Plaintiff has named the KSA, doing business as the Royal Consulate of Saudi Arabia (i.e., the name under which the KSA executed the 1995 Lease) as the defendant.

10. On or about January 23, 1995, Predecessor Landlord and Tenant executed a First Amendment to the 1995 Lease (the "**First Amendment**"), dated for reference purposes as of December 1, 1994. Attached hereto as Exhibit 2 is a true and correct copy of the First Amendment.

11. On or about March 9, 2000, Predecessor Landlord and Tenant entered into a Second Amendment to the 1995 Lease (the "**Second Amendment**"). Attached hereto as Exhibit 3 is a true and correct copy of the Second Amendment.

12. On or about November 9, 2000, Predecessor Landlord and Tenant entered into a Third Amendment to the 1995 Lease (the "**Third Amendment**"). Attached hereto as Exhibit 4 is a true and correct copy of the Third Amendment.

13. On or about February 14, 2002, Predecessor Landlord and Tenant entered into a Fourth Amendment to the 1995 Lease (the "**Fourth Amendment**"). Attached hereto as Exhibit 5 is a true and correct copy of the Fourth Amendment.

14. On or about January 20, 2004, Predecessor Landlord and Tenant entered into a Fifth Amendment to the 1995 Lease (the "**Fifth Amendment**"). Attached hereto as Exhibit 6 is a true and correct copy of the Fifth Amendment.

15. On or about April 30, 2007, Predecessor Landlord and Tenant entered into a Sixth Amendment to the 1995 Lease (the "**Sixth Amendment**"). Attached hereto as Exhibit 7 is a true and correct copy of the Sixth Amendment.

16. On or about April 15, 2008, Predecessor Landlord and Tenant entered into a Seventh Amendment to the 1995 Lease (the "**Seventh Amendment**"). Attached hereto as Exhibit 8 is a true and correct copy of the Seventh Amendment.

17. On or about April 1, 2011, Predecessor Landlord and Tenant entered into an Eighth Amendment to the 1995 Lease (the "**Eighth Amendment**"). Attached hereto as Exhibit 9 is a true and correct copy of the Eighth Amendment.

18. Hereinafter, the 1995 Lease, First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, and Eight Amendment will be referred to Collectively as the "**Lease**".

19. In August, 2016, Tenant further executed an Estoppel Certificate (the "**Estoppel Certificate**") confirming, *inter alia*, that the Lease constitutes the entire agreement between Predecessor Landlord and Tenant and that the Lease expires as of March 31, 2020. Attached hereto as Exhibit 10 is a true and correct copy of the executed Estoppel Certificate.

20. On or about September 30, 2016, Predecessor Landlord assigned to Plaintiffs, and Plaintiffs assumed, all of Predecessor Landlord's right, title and interest to the Premises and the Lease pursuant to an Assignment and Bill of Sale made as of September 30, 2016 (the "**Assignment**"). Pursuant to the Assignment, Plaintiffs became the landlord under the Lease. Attached hereto as <u>Exhibit 11</u> is a true and correct copy of the Assignment.

21. Plaintiffs have performed all the terms, conditions, covenants, and promises required to be performed by them in accordance with the Lease, except those which Plaintiffs have been prevented from performing by Tenant, or those acting at its direction or on its behalf.

## **FIRST CAUSE OF ACTION (BREACH OF CONTRACT)**

(Against All Defendants)

22. Plaintiff incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 21 above

23. Pursuant to the terms of the Lease, and as confirmed by the Estoppel Certificate, the term of the Lease expired as of March 31, 2020.

24. Pursuant to <u>Section 15.2 of the Lease</u>,

> If Tenant, with or without Landlord's consent remains in possession of the Premises or any part thereof after the expiration of the term hereof such occupancy shall be a tenancy from month to month upon all the provisions of this Lease except that (a) the "Annual Rental" during such tenancy shall be and mean to a monthly rental payable in advance at two hundred percent (200%) of one twelfth of the Annual Rental for the last Lease Year of the term. . .

(Exhibit 1, § 15.2)

/ / /

/ / /

25. The "Annual Rental for the last Lease Year of the term" (as defined in the Lease) was $1,364,940.96.

26. Tenant failed to vacate the Premises after the expiration of the scheduled term of the Lease and, by operation of law, its tenancy converted to a holdover tenancy. Accordingly, its base rent became $227,490.16 per month (i.e., 200% of one 1/12th of $1,364,940.96.)

27. Pursuant to Section 5.1 of the Lease,

> Tenant shall pay to Landlord Tenant's share of the Operating Excess [the "**CAM Charges**"] for any calendar year for the entire term of this Lease as provided in this Section 5.1. The Term Operating Excess means annual Operating Expenses less $245,353.45. . . If the term of this Lease commences other than on the first day of a calendar year or ends other than on the last day of a calendar year, the amount of the Operating Expenses for such year shall be prorated based on the actual number of days in such year that this Lease was in effect, using a 360 day year, and Tenant shall be obligated to pay to Landlord only the amount of the Tenant's Percentage times that portion of such year that this Lease was in effect. . . .

(Exhibit 1, § 5.1). The $245,353.45 deduction was subsequently amended by the Eighth Amendment to $350,000.00. (Exhibit 9, ¶ 3.)

28. Pursuant to Section 13.4 of the Lease,

> If Tenant fails to make any payment of rent, expenses or other amounts required of Tenant under this Lease within ten (10) days of the date such amount is due as set forth in this Lease, then, in addition to any other amounts recoverable by Landlord hereunder, Tenant shall pay

786744.2

6

> Landlord a late charge in an amount equal to $0.01 for each dollar past due. . . .

(Exhibit 1, § 13.4)

29. Pursuant to Section 13.5 of the Lease,

> All amounts which Tenant is obligated to pay Landlord pursuant to this Lease or when due shall bear interest at the maximum interest rate chargeable by law, not to exceed seven percent (7%) per annum, from the due date until paid, unless otherwise specifically provided herein. If a late charge is due with respect to such amount pursuant to Section 13.4, such interest shall commence to accrue thirty (30) days following the date such amount is due. . . .

(Exhibit 1, § 13.5)

30. On or about July 20, 2020, Landlord served the Tenant with a notice terminating its holdover tenancy effective as of August 31, 2020. Thereafter, on or about August 31, 2020, Tenant vacated the Premises and returned possession to the Landlord.

31. As noted above, pursuant to the express terms of the Lease, Tenant's base rent for the period of its holdover tenancy was $227,490.16 per month for each of the five (5) months (i.e., April 1, 2020 through August 31, 2020) its remained in possession – i.e., $1,137,450.80 in total.

32. As noted above, pursuant to the express terms of the Lease, Tenant was also obligated to pay CAM charges incurred during the holdover period. Such CAM charges, calculated as per the Lease, amounted to $128,418.91.

33. Tenant has failed and refused to pay, let alone timely pay, the full amount of its base rent, or any of its CAM charges.

34. As of October 1, 2020, Tenant has failed to pay:

    a.    Base rent totaling $568,725.40 (representing $1,137,450.80, less

sums paid of $568,725.40);

    b.    CAM charges totaling $128,418.91;

    c.    Late Fees totaling $12,658.70; and

    d.    Interest totaling $12,095.03 through September 30, 2020.

35. Accordingly, as a direct and proximate result of Tenant's breach, Plaintiffs have suffered damages of no less than $721,898.04, plus interest that is continuing to accrue at the contractually agreed upon rate of 7% per annum.

## SECOND CAUSE OF ACTION (BREACH OF CONTRACT)
### (Against All Defendants)

36. Plaintiff incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 21 above

37. Pursuant to Section 8.1 of the Lease:

> . . .Upon surrender of the Premises to Landlord, Tenant shall deliver the Premises to Landlord, broom clean, in as good order, condition and repair as they are on the commencement of the term of this Lease, ordinary and reasonable wear excepted. . . .

(Exhibit 1, § 8.1).

38. Upon surrender of the Premises, however, Defendant failed to leave the Premises broom clean, let alone in good order, condition and repair. By way of example, and not limitation, the Defendant left balconies covered with discarded potted plants, rooms with broken furniture and appliances, as well as general debris throughout the Premises. In addition, apparently during the process of removing personal property and/or trade fixtures, Tenant damaged building systems, including but not limited to the parking garage gate controllers (rendering the gates inoperable) as well as the magnetic locks on multiple patio doors (rendering them unable to be secured). Further, without Landlord approval, Tenant installed walls and gates on two of the parking levels, which were left in place by the Defendant upon surrender

of the Premises and which needed to be removed. Finally, debris was left throughout the parking garage, including discarded furniture, appliances and building materials.

39. Accordingly, as a direct and proximate result of Tenant's breach, Plaintiffs have suffered damages subject to proof at trial, but estimated at in excess of **$20,000**.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

As to the First Cause of Action

1. For damages in an amount no less than **$721,898.04**, plus interest thereon as provided by contract and/or law at the maximum allowable legal rate;

2. For Plaintiff's reasonable attorneys' fees, to the maximum extent allowable by contract and/or law;

3. For Plaintiff's costs of suit incurred herein; and

4. For such other relief as the Court deems just and proper.

As to the Second Cause of Action

1. For damages in an amount subject to proof at trial, but estimated at no less than **$20,000**, plus interest thereon as provided by contract and/or law at the maximum allowable legal rate;

2. For Plaintiff's reasonable attorneys' fees, to the maximum extent allowable by contract and/or law;

3. For Plaintiff's costs of suit incurred herein; and

4. For such other relief as the Court deems just and proper.

DATED: October 9, 2020         RESCH POLSTER & BERGER LLP

By: _____
ANDREW V. JABLON
Attorneys for Plaintiffs
2045 Sawtelle I, LLC; and 2045 Sawtelle II, LLC

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action.

DATED: October 9, 2020        RESCH POLSTER & BERGER LLP

By: _____
ANDREW V. JABLON
Attorneys for Plaintiffs
2045 Sawtelle I, LLC; and 2045 Sawtelle II, LLC

786744.2

10