## SAWTELLE OFFICE BUILDING LEASE

This Lease, dated for reference purposes only as of the 1st day of April, 1995, is entered into by and between Sawtelle Courtyard Partners, L.P. ("Landlord"), and THE ROYAL CONSULATE OF SAUDI ARABIA ("Tenant").

### PREAMBLE

Landlord, in consideration of the rent to be paid and the covenants and agreements to be performed by Tenant, as hereinafter set forth, does hereby lease, demise and let unto Tenant and Tenant hereby leases and accepts from Landlord the "Premises", as defined below, shown and designated on the floor plans attached hereto as Exhibit "A" and incorporated herein by this reference for the "Term", as defined below, unless sooner terminated as herein provided. The Premises are leased by Landlord to Tenant and are accepted and are to be used and possessed by Tenant upon and subject to the following terms, provisions, covenants, agreements and conditions.

1.   PRINCIPAL LEASE PROVISIONS.

Each reference in this Lease to any of the terms described in this Article 1 shall mean and refer to the following; however, the other Articles of this Lease contain numerous refinements and exceptions which qualify the provisions of this Article; all other terms are as defined is this Lease:

1.1   Landlord's Address:

Sawtelle Courtyard Partners, L.P. c/o Newco Management Company The Trillium Buildings
6320 Canoga Avenue, Suite 1430
Woodland Hills, CA 91367-2591

1.2   Tenant's Address:

2045 Sawtelle Boulevard
Los Angeles, CA 90025

1.3   Premises Address:

Sawtelle Courtyard Building
2045 Sawtelle Boulevard
Los Angeles, CA 90025

1.4   Premises and Common Areas. The term "Premises" means land and improvements located at the address in Section 1.3 above, including without limitation, a below ground garage, the office building interior and exterior, and all exterior sidewalks and other common areas ("common areas").

1.5   Area of Premises. 28,865 net rentable square feet, 27,474 usable square feet.

1

**Exhibit 1**              **Page 11**

1.6  <u>First Year's Rent.</u>  On or before the Commencement Date (defined in Section 3.1), Tenant shall pay the Annual Rental for the first Lease Year.

1.7  <u>Annual Rental.</u>  $654,885 during the initial Term, and as specified in Section 3.6 during the Extension Term.

1.8  <u>Term or term.</u>  The five (5) year period ending on the fifth (5th) anniversary of the actual Commencement Date defined in Section 3.1, plus the Extension Term, if the Term is extended pursuant to Section 3.6.

1.9  <u>Estimated Commencement Date.</u>  April 1, 1995.

1.0  <u>Termination Date.</u>  The last day of the Term.

1.11  <u>Extension Term.</u>  The five (5) year period commencing on the end of the initial Term.

1.12  <u>Tenant's Percentage.</u>  100%.

1.13  <u>Lease Year.</u>  The 12 month period starting on the Commencement Date, and each 12 month period thereafter through the Term.

1.14  <u>Tenant's Brokers.</u>  None.

1.15  <u>Parking.</u>  Tenant shall be entitled to all parking spaces in the garage within the Premises, to be located behind an automatic gate.

1.16  <u>Use.</u>  General office.

1.17.  <u>Initial Improvements.</u>  The tenant improvements to be installed in the Premises by Landlord pursuant Exhibit C attached hereto and incorporated herein by this reference.  As detailed in and subject to Exhibit C, Landlord will provide a construction allowance of $1,000,000 to be applied to all hard and soft construction costs, but excluding interior design and decorating.

2.  <u>COMMON AREAS AND PARKING</u>

2.1  <u>Compliance with Law.</u>  Tenant shall, at Tenant's expense, comply promptly with all applicable statues, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term or any part of the term hereof, regulating the use by Tenant of the Premises.  Tenant hereby accepts the Premises subject to applicable zoning, municipal, county and state laws, ordinances and regulations governing and regulating the use of the Premises, and any covenants or restrictions of record now in effect or arising in

2

**Exhibit 1**                    **Page 12**

the future.  Landlord shall make any and all alterations to the Premises mandated by changes in applicable law, except as provided to the contrary in Section 16 or to the extent required by Tenant's activities on the Premises.

2.2 <u>Common Areas</u>.  Landlord shall retain the right, but not the obligation, to make changes in the common areas, landscaping, and any mechanical systems, wherever located in the Premises, and to alter, close or relocate any facility in the common areas.

2.3 <u>Garage</u>.  Landlord shall maintain the garage within the Premises in accordance with Section 6, including the card operated automatic gate; provided that, in accordance with Section 18, Tenant shall be responsible for all security in the garage and the cost of all security measures other than the gate, such as guards.

3.  <u>TERM AND POSSESSION.</u>

3.1 <u>Term</u>.  The term of this Lease shall be for the term set forth in Section 1.8, commencing on the estimated Commencement Date as set forth in Section 1.9 (or such later date as set forth in Section 3.2 (the "Commencement Date") and ending on the fifth (5th) anniversary of the Commencement Date, unless the term is extended pursuant to Section 3.6 ("Termination Date"), unless sooner terminated as provided in this Lease.

3.2 <u>Possession.</u>  Tenant agrees that if Landlord is unable to deliver possession of the Premises to Tenant on the Estimated Commencement Date, Landlord shall not be liable for any damage caused thereby, nor shall this Lease be void or voidable.  Under such circumstances, the term of this Lease shall not commence and the rent and the payments for expenses which Tenant is obligated to pay shall not commence until the Premises are available for occupancy by Tenant, unless such delay is the fault of Tenant.  Tenant waives the provisions of subdivision 1 of Section 1932 of the California Civil Code.  If Landlord tenders possession of the Premises to Tenant prior to the Estimated Commencement Date and if Tenant elects to accept such prior tender, the term of this Lease shall commence on the date Tenant takes possession of the Premises and all of the terms, covenants and conditions of this Lease including the payment of rent and other expenses, shall be effective as of such date. Notwithstanding the fact that the term of this Lease commences earlier or later than the Estimated Commencement Date, the term of this Lease shall end on the "Termination Date" set forth in Section 1.10.

3.3 <u>Acceptance of Premises</u>.  By taking possession of the Premises, Tenant accepts the Premises in its then "as is" condition and acknowledges that the Premises are in good and satisfactory condition at the time Tenant takes possession of the Premises; except for such items as are set forth in written notice to Landlord delivered on or prior to Tenant taking possession.  Landlord shall correct such items within a reasonable period of time.

3.4 <u>Quiet Enjoyment</u>.  Upon Tenant's paying the rent and other expenses provided in

**Exhibit 1**                    **Page 13**

this Lease and observing and performing all of the terms, covenants and conditions to be observed and performed by Tenant hereunder, Tenant shall have possession of the Premises for the entire term hereof, subject to all of the provisions of this Lease.

3.5  Security Deposit.  INTENTIONALLY OMITTED

3.6  Option to Extend.  Tenant shall have one option ("Option") to extend the Term to the end of the Extension Term (i.e., an additional 5 years).  The Option must be exercised by irrevocable notice in writing of such exercise, delivered by Tenant to Landlord, not later than 6 months prior to the end of the initial Term.  The Annual Rental for the Extension Term shall be the greater of (i) the Annual Rental in effect at the end of the initial Term, or (ii) the "Fair Market Value".

3.6.1  Fair Market Value.  The "Fair Market Value" means the then fair market value being charged for a 5 year lease without rent escalations for similar premises in the vicinity of the Premises, and taking into account the value of any tenant improvements installed by Landlord or Tenant.  Landlord and Tenant shall reasonably and in good faith attempt to agree on the Fair Market Value beginning not later than two (2) months prior to the commencement of the Extension Term.  If the parties are unable to agree upon the Fair Market Value prior to the end of such month, then within five (5) days thereafter each party, at its cost and by giving notice to the other party, shall appoint an independent M.A.I. real estate appraiser with at least five (5) years full-time industrial and commercial appraisal experience in Los Angeles County to determine such Fair Market Value.  If a party does not appoint an appraiser within such five (5) days after the other party has given notice of the name of its appraiser, the single appraiser appointed shall be the sole appraiser and shall set the Fair Market Value.  If there are two appraisers appointed by the parties as stated in this Section 3.6.1, they shall meet promptly and attempt to set the Fair Market Value.  If the two appraisers are unable to agree within ten (10) days after the second appraiser has been appointed, they shall attempt to elect a third appraiser meeting the above qualifications within ten (10) days after the last day the two appraisers are given to set the Fair Market Value.  If the two appraisers are unable to agree on the third appraiser, Landlord or Tenant, by giving ten (10) days notice to the other, can apply to the then president of the Los Angeles County Real Estate Board, or to the presiding judge of the Superior Court of Los Angeles County, for the selection of a third appraiser meeting the qualifications stated in this Subsection.  Each of the parties shall bear one-half of the cost of appointing the third appraiser and of paying the third appraiser's fee.  The third appraiser, however selected, shall be a person who has not previously acted in any capacity for either party.  Within fifteen (15) days after the selection of the third appraiser, each appraiser shall propose a Fair Market Value, and the Fair Market Value shall be the average of the two closest appraisals (unless the highest appraisal is less than 120% of the lowest, in which case, the average of the three appraisals shall be the Fair Market Value).

4.  RENT.

rch\saw\lease
2-21-94                                       4

**Exhibit 1**                    **Page 14**

4.1 Payment of Rent.  Tenant shall pay the Annual Rental, without any prior demand therefor and without any deduction or offset whatsoever, in lawful money of the United states of America, to Landlord on the first day of each Lease Year during the term of this Lease as rent for the Premises for such Lease Year.  Tenant shall make all payments as rent and other expenses to Landlord at such address as Landlord may from time to time request in writing.

4.2 Monthly Rental.  INTENTIONALLY DELETED

5.  OPERATING EXPENSES.

5.1 Payment of Operating Expenses. Tenant shall pay to Landlord Tenant's share of the Operating Excess for any calendar year for the entire term of this Lease as provided in this Section 5.1.  The term "Operating Excess" means annual Operating Expenses less $245,353. By the commencement of the term of this Lease, Landlord shall deliver to Tenant an estimate of the Operating Expenses for the calendar year in which the term of this Lease commences. By the end of each calendar year thereafter during the term of this Lease, Landlord shall deliver to Tenant an estimate of the Operating Expenses for the following calendar year. Tenant shall pay to Landlord on the commencement of the term of this Lease and on the first day of each Lease Year an amount equal to Tenant's Percentage as set forth in Section 1.12 times the Operating Excess for such year as estimated by Landlord.  Following the end of each calendar year during the term of this Lease, Landlord shall deliver to Tenant a statement of the actual Operating Expenses for such calendar year.  If the amount of Tenant's Percentage times the Operating Excess for such year exceeds the amount paid by Tenant to Landlord with respect to Operating Excess for such year, Tenant shall pay such excess to Landlord within fifteen (15) days of delivery to Tenant of the statement of the Operating Expenses for such year.  If the amounts paid by Tenant to Landlord with respect to Operating Excess for such year exceed the amount of Tenant's Percentage times the Operating Excess for such year, such excess shall be credited against the amounts due from Tenant thereafter pursuant to this Section 5.1, or, if this Lease has terminated, such excess shall be credited against any amounts which Tenant owes Landlord pursuant to this Lease and, to the extent all amounts which Tenant owes Landlord pursuant to this Lease have been paid, Landlord shall  promptly pay such excess to Tenant.  If the term of this Lease commences other than on the first day of a calendar year or ends other than on the last day of a calendar year, the amount of the Operating Expenses for such year shall be prorated based on the actual number of days in such year that this Lease was in effect, using a 360 day year, and Tenant shall be obligated to pay to Landlord only the amount of the Tenant's Percentage times that  portion of such year that this Lease was in effect.  Any delay by Landlord in delivering any estimate or statement pursuant to this Section shall not relieve Tenant of its obligations pursuant to this Section except that Tenant shall not be obligated to make any payments based on such estimate or statement until fifteen (15) days after receipt of such estimate or statement.

5.2 Definition of Operating Expenses.  "Operating Expenses" shall be determined on an accrual basis for each calendar year by taking into account on a consistent basis all costs

rch\saw\lease
2-21-94

**Exhibit 1**                    **Page 15**

of operation, management, maintenance and repairs of the Premises, whether undertaken by Landlord pursuant to the specific provisions of this Lease or undertaken by Landlord in the exercise of its reasonable discretion, including, but not limited to, the costs of cleaning, utilities, air conditioning, plumbing, casualty and liability insurance, property taxes and assessments, accounting and a reasonable management fee. Operating Expenses shall also include an amount necessary to amortize the cost of improvements installed to reduce Operating Expenses, and the cost of improvements required by governmental entities following completion of the Premises amortized over the useful life of such items together with interest at the rate of fourteen percent (14%) per annum on the unamortized balance of such costs; provided, however, that in no event shall such interest rate exceed the maximum rate permitted by law if such amortization of such costs or expenses is deemed a loan. Operating Expenses shall not include Landlord's executive or supervisory salaries, Landlord's general overhead, administrative, legal or accounting expenses, the costs of tenant improvements, leasing commissions, depreciation, interest, ground rent and administrative costs not specifically incurred in the operation, management, maintenance and repair of the Premises. Operating Expenses shall not include any expense to the extent paid or reimbursed from insurance proceeds but Operating Expenses shall include any deductible amount excluded from insurance coverage. All Operating Expenses shall be "net" expenses and shall be reduced by any reimbursement, discount, credit, allowance, rebate, or guaranty or warranty reimbursement or similar item.

5.3 Definition of Property Taxes. The term "property taxes and assessments" as used in Section 5.2 shall mean all real and personal property taxes and assessments, license tax, rental tax, improvement bonds and other governmental levies imposed on or with respect to the Premises and any property of Landlord or Landlord's agents used principally in the operation, management, maintenance or repair of the Premises, together with any taxes or assessments imposed in substitution of or supplement to any taxes or assessments previously included within the definition of property taxes and assessments but excluding any federal, state or local income, franchise, estate or inheritance tax, and excluding any tax of a type allocated to Tenant pursuant to Section 5.4.

5.4 Taxes Charged to Tenant. Tenant shall pay to Landlord the amount of any taxes and assessments which accrue during the term of this Lease, based upon the value of tenant improvements in the Premises in excess of the value of the Initial Improvements. Pursuant to Section 5.2 et seq. Tenant shall also pay to Landlord, concurrently with the rent and other payments, the amount of any taxes and assessments which accrue during the term of this Lease and which are based upon the rent or other payments by Tenant relating to the Premises or upon the area or use of the Premises including any gross income tax or excise tax but in each case excluding federal, state or local income tax or franchise tax. At Landlord's election, Tenant shall pay such taxes and assessments ten (10) days prior to the date such taxes and assessments are due or shall pay a monthly impound in an amount sufficient to accumulate sufficient funds to pay like taxes and assessments when due. Landlord shall apply all amounts received from Tenant pursuant to this Section in payment of the taxes and assessments

**Exhibit 1**                    **Page 16**

described in this Section.   The amounts by which any refunds relating to such taxes and amounts payable by Tenant and any payment by Tenant to Landlord pursuant to this Section exceed the amounts actually paid by Landlord shall be refunded promptly to Tenant if Tenant is otherwise in compliance with its obligations pursuant to this Lease.

5.5   Additional Expenses Payable By Tenant.   Tenant shall pay a reasonable charge determined by Landlord for any utilities or services required to be provided by Landlord by reason of any use by Tenant of any utilities or services in excess of utilities or services customarily provided for general office use in the building or by reason of any recurrent use of the Premises at any time other than the normal business hours of generally recognized business days and shall also pay any Costs reasonably incurred by Landlord to meter or otherwise measure the amount of such utilities or services used by Tenant.   Tenant shall pay for any additional or unusual janitorial services required by reason of Tenant's use of the Premises or by reason of improvement in the Premises other than the Initial Improvements. If the replacement cost of improvements in the Premises in excess of such replacement cost if only the Initial Improvements were installed in the Premises or Tenant's use or the conduct of business on the Premises, whether or not with Landlord's consent and whether or not otherwise permitted by this Lease, results in any increase in premiums for the insurance carried by Landlord with respect to the Premises, Tenant shall pay any such Increase in premiums within ten (10) days after being billed by Landlord.

5.6   Audit.   Tenant shall have the right at its expense and at reasonable time to audit Operating Expenses including the review and copying of all invoices and other source documents.   Failure to audit and identify any alleged errors within one year after the end of a calendar year shall constitute tenant's approval of such Operating Expenses.

6.   SERVICES AND UTILITIES.

6.1   Services by Landlord.   Landlord shall furnish to the Premises during normal business hours of generally recognized business days such amounts of air conditioning, heating and ventilation as may be reasonably necessary for the comfortable use and occupation of the Premises.   Landlord shall at all times furnish the Premises with elevator service and reasonable amounts of electricity for normal lighting and office machines and shall furnish water for lavatory and drinking purposes.   Landlord shall provide janitorial service equivalent to that furnished in comparable office buildings which shall consist essentially of a nightly clean-up five (5) days per week (excluding holidays) and window washing as reasonably required. Landlord shall replace fluorescent tubes and ballasts in the Landlord's building standard overhead fluorescent fixtures as required.   Tenant shall pay for replacement of all other tubes, ballasts and bulbs as required.

6.2   Maintenance and Repair by Landlord.   Landlord shall maintain the Premises in a first class condition, shall maintain the plumbing, heating, ventilating, air conditioning, elevator, electrical and other mechanical systems of the Premises in good working order, shall make

rch\saw\lease
2-21-94

7

Exhibit 1                    Page 17

necessary repairs to the roof and the shell of the Premises, and shall repair promptly any damage to the Premises as provided in Article 10.

6.3 _Interruption of Service._ Landlord shall not be liable and the Annual Rental and other payment to Landlord shall not abate for interruptions to the telephone, plumbing, heating, ventilating, air conditioning, elevator, electrical or other mechanical systems or cleaning services, by reason of accident, emergency, repairs, alterations, improvements or shortages or lack of availability of materials or services. At any time during the term of this Lease, any utilities or services may be conserved by Landlord without abatement of rent or other expenses if undertaken by Landlord as required by any governmental agency or in a reasonable effort to reduce energy or other resource consumption.

## 7.  USE AND OCCUPANCY BY TENANT.

7.1 _Use by Tenant._ Tenant shall use and occupy the Premises for general office purposes as described in Section 1.16 and for no other purposes without the prior written consent of the Landlord. Tenant shall operate its business on the Premises during normal business hours and shall maintain sufficient personnel on the Premises during normal business hours to receive and supervise visitors to the Premises. Tenant shall furnish and decorate the Premises in a manner consistent with its business. Tenant shall not do or permit anything to be done in or about the Premises which would constitute a nuisance or significantly interfere with use of the Garage.

7.2 _Rules and Regulations._ Tenant and its employees, agents and visitors shall observe faithfully the Rules and Regulations attached hereto as Exhibit "B" and made a part hereof, and such other and further reasonable Rules and Regulations as Landlord may from time to time adopt. Landlord shall not be liable to Tenant for violation of any Rules and Regulations or the breach of any provision in any lease by any other tenant or other party in the Premises.

7.3 _Prohibited Uses._ INTENTIONALLY DELETED

## 8.  MAINTENANCE, REPAIRS AND ALTERATIONS.

8.1 _Maintenance and Repair._ During the term of this Lease, Tenant shall take good care of the Premises and fixtures therein and maintain them in good order, condition and repair in a quality and class equal to the original work, ordinary and reasonable wear excepted. Upon surrender of the Premises to Landlord, Tenant shall deliver the Premises to Landlord, broom clean, in as good order, condition and repair as they are on the commencement of the term of this Lease, ordinary and reasonable wear excepted. Without limiting the foregoing, Landlord may require that any such maintenance or repair be performed by Landlord at Tenant's expense.

8.1.1 Tenant shall pay the reasonable cost of all maintenance and repairs caused by the

**Exhibit 1**                                    **Page 18**

negligence or willful acts or omissions of Tenant, or its employees, agents.

8.2   Alterations.   Tenant shall not make or permit any alterations, additions or improvements to be made to the Premises without obtaining Landlord's prior written consent which shall not be unreasonably withheld, and then only by contractors or mechanics approved by Landlord.  Landlord shall generally consent to alterations, additions or improvements which do not affect the value of the Premises significantly and which do not affect the structure or operation of the Premises.  Tenant covenants and agrees that all work done by Tenant shall be performed in full compliance with all laws, rules, orders, ordinances, directions, regulations and requirements of Landlord's insurers and any governmental or quasi-governmental insurance office, or of any similar body.  Unless otherwise approved by Landlord, all alterations, additions and improvements to the Premises shall be made by Landlord.  Landlord shall pay for the cost of any alterations, additions and  improvements to the Premises only to the extent Landlord agrees to do so by a separate written agreement with Tenant.  Otherwise, Tenant shall pay all costs for such alterations, additions and improvements.  Tenant shall report all costs incurred by Tenant for any alterations, additions or improvements made by Tenant to the Premises and shall permit Landlord to examine all contracts and records relating to such alterations, additions or improvements.   All alterations, additions and improvements to the Premises by Landlord or Tenant shall become part of the realty and belong to Landlord and, at the end of the term hereof shall remain on the Premises without compensation of any kind to Tenant except that any trade fixtures which are installed and paid for by Tenant shall remain the property of Tenant and may be removed by Tenant during the term of this Lease provided Tenant repairs any damage to the remaining improvements of the Premises caused by the removal of such fixtures.   Moveable furniture and equipment of Tenant shall remain the property of the Tenant.

## 9.   INSURANCE AND INDEMNIFICATION.

9.1   Landlord's Insurance and Waiver.   During the term of this Lease, Landlord shall obtain and keep in full force and effect, fire and extended coverage insurance with a vandalism and malicious mischief endorsement for the Premises and public liability insurance in such reasonable amounts with such reasonable deductions as would be carried by a prudent owner of a similar building in southern California, or which the first mortgagee of the Building reasonably deems necessary in connection with the operation of the Premises.  Landlord may obtain insurance for the Premises and the rents from the Premises against such other perils as Landlord reasonably considers appropriate.  Tenant acknowledges that it will not be a named insured in such policy and that it has no right to receive any proceeds from any such insurance policies carried by Landlord.

9.2   Tenant's Insurance.   During the entire term of the Lease, Tenant shall obtain and keep in full force and effect, at its sole cost and expense, the following insurance: (i) fire and extended coverage insurance with a water damage and sprinkler damage endorsement and with a vandalism and malicious mischief endorsement for property of Tenant located in the Premises

rch\saw\lease
2-21-94

Exhibit 1                    Page 19

in an amount not less than ninety percent (90%) of its cash value for any property such as standard office furniture, furnishings, equipment, sales and supplies and in an amount of one hundred percent, (100%) of its cash value for any property such as cash, antiques, art objects and jewelry, (ii) comprehensive general liability insurance, including personal injury and property damage insuring against all claims and liability arising out of the use or occupancy of the Premises with limits as appropriate to Tenant's use of the Premises but not less than $5,000,000 and (iii) rental loss insurance for Landlord's benefit and insurance against interruption of Tenant's business and loss of Tenant's business records in such amount as appropriate to Tenant's business, unless Tenant shall provide, in writing, evidence of self insurance pertaining to interruption of Tenant's business and loss of Tenant's business records. All insurance policies of Tenant required by this Lease shall be taken out with insurers reasonably acceptable to Landlord and in form reasonably satisfactory to Landlord. All such policies shall contain a waiver by the insurance company of any right of subrogation, shall name the Landlord and any other person holding an interest in the Premises designated by Landlord as additional insured, as their interests appear, and shall contain a cross-liability endorsement. All such policies shall provide that they can not be canceled without twenty (20) days prior written notice to Landlord and any other person holding an interest in the Premises designated by Landlord. Tenant shall deliver copies of such policies to Landlord on request. Tenant may, by written notice of such election to Landlord, elect to be a self-insurer of its property such as office furniture, furnishings, equipment, files and supplies, cash, securities, antiques, art, jewelry and against interruption of Tenant's business and loss of Tenant's business records. As an alternate to copies of Tenant's insurance policies, Landlord agrees to accept certificates of such insurance which are in a form satisfactory to Landlord.

9.3 <u>Indemnification.</u> Tenant hereby waives all claims against Landlord, its agents and employees for loss, theft or damage to equipment, furniture, records and other property on or about the Premises for loss or damage to Tenant's business or for death or injury to persons on or about the Premises, except to the extent caused by the gross negligence or willful misconduct of Landlord, its agents or employees. Tenant shall indemnify, defend, protect and hold harmless Landlord, its agents and employees from and against any and all claims and liability for the loss, theft or damage to property on or about the Premises except Tenant's indemnification shall not include an indemnification for liability for the gross negligence or willful misconduct of Landlord, its agents or employees. Tenant shall indemnify, defend, protect and hold Landlord, its agents and employees harmless from and against any and all claims and liability arising from any breach or default by Tenant in the performance of any obligation of Tenant under this Lease or arising from the negligence or willful misconduct of Tenant, its agents, employees or visitors, including without limitation the covenants in Section 17. Landlord shall not be liable to Tenant for any negligence or act of any occupant of the Premises or any owner or occupant of any property adjoining the Premises other than Landlord, its agents and employees.

9.4 <u>Waiver of Subrogation.</u> Without limiting the obligation of Tenant to maintain insurance which permits waiver of subrogation (unless otherwise approved in writing by

reli\saw\lease
2-21-94

Exhibit 1          Page 20

Landlord), Landlord and Tenant hereby waive all causes of action and rights of recovery against each other, against all subtenants or assignees of Tenant, against all other tenants of the Premises and their assignees and sublessees and against any other person or entity holding an interest in the Premises (together, the "Affected Parties"), and against the agents, officers and employees of the Affected Parties, for any loss occurring to the property of the Affected Parties resulting from any of the perils insured against under any and all casualty insurance policies in effect at the time of any such loss regardless of cause or origin of such loss, including the negligence of the Affected Parties or the agents, officers or employees of the Affected Parties, to the extent of any recovery on such policies of insurance, except to the extent that any of such policies of insurance are invalidated, in whole or part, by said waiver, and so long as such policies of insurance shall contain (and Landlord and Tenant hereby agree to use their best efforts to cause such policies to contain), by endorsement or otherwise, a clause in such form or having substantially the same effect as the following:  "It is hereby stipulated that this insurance shall not be invalidated in whole or in part should the insured or any of them waive in writing prior to a loss any or all rights of recovery against any person or entity for loss occurring to the property described herein."  Any self-insurance by Tenant shall be deemed to include such waiver of subrogation against the Affected Parties.  The obligation of Landlord to use its best efforts to cause such policies to contain the above described clause shall not obligate Landlord to obtain such insurance from insurance companies unacceptable to Landlord nor to incur premium charges therefor which exceed one hundred ten percent (110%) of the premium charges for such insurance which does not include such a clause.  The obligation of Tenant to use its best efforts to cause such policies to contain the above described clause shall not obligate Tenant to obtain such insurance for the benefit of the Affected Parties other than Landlord from insurance companies unacceptable to Tenant nor to incur premium charges therefor which exceed one hundred ten percent (110%) of the premium charges for such insurance which does not include such a clause benefitting the Affected Parties other than Landlord.  Landlord shall promptly notify Tenant in writing if such policies of Landlord do not contain the above described clause.  Tenant shall promptly notify Landlord in writing if such policies of Tenant do not contain the above described clause, and in such event, Landlord shall promptly endeavor to notify the other Affected Parties of such event.

10.   DAMAGE OR DESTRUCTION.

10.1  Repair of Damage.  If the Premises are damaged or destroyed by fire or other casualty covered by the usual form of fire and extended coverage, Landlord shall commence repair or restoration within forty-five (45) days of such damage or destruction and shall diligently pursue such repair and restoration to completion unless this Lease is terminated as provided herein.  Landlord shall pay the cost of repair to any damage or destruction of the Premises caused by the negligence or willful misconduct of Landlord, its agents or employees. Tenant shall pay the reasonable cost of repair of any damage or destruction of the Premises except to the extent caused by defects in construction of the Premises or the negligence or willful misconduct of Landlord, its agents or employees.  Tenant shall pay the reasonable cost of repair of any damage or destruction of the Premises caused by the negligence or willful

rch\saw\lease
2-21-94

11

**Exhibit 1**                    **Page 21**

misconduct of Tenant, its employees, agents or visitors. The costs of repair by the Landlord of the Premises shall include a reasonable overhead by Landlord. Tenant's obligation to pay the cost of repairs for damage or destruction to the Premises shall be reduced by any insurance proceeds payable to Landlord for such damage or destruction, but only to the extent such insurance provides for a waiver of subrogation which permits such reduction of Tenant's obligations. Tenant shall vacate such portion of the Premises as Landlord reasonably requires to enable Landlord to repair the Premises.

10.2   Abatement.   If the Premises are damaged or destroyed by fire or other casualty not caused by the negligence or willful misconduct of Tenant, its agents, employees or visitors, the Annual Rental, and the payment by Tenant of its share of Operating Excess shall abate until such damage or destruction is repaired in proportion to the reduction of the area or the Premises usable by Tenant. Except as specifically provided in this Lease, this Lease shall not terminate, Tenant shall not be released from any of its obligations under this Lease, the rent and other expenses payable by Tenant under this Lease shall not abate and Landlord shall have no liability to Tenant for any damage or destruction to the Premises or any inconvenience or injury to Tenant by reason of any maintenance, repairs, alterations, decoration, additions or improvements to the Premises. Tenant hereby waives the provisions of subdivision 2 of Section 1932 and subdivision 4 of Section 1933 of the California Civil Code.

10.3   Termination by Landlord.   If the Premises are damaged or destroyed, Landlord shall have the option to terminate the term of this Lease within sixty (60) days of the date of such damage or destruction if the cost of repair of the Premises, as reasonably determined by Landlord, exceeds the insurance proceeds estimated by Landlord to be payable to Landlord for such damage or destruction, unless the Tenant agrees in writing to pay any costs of repairs of the Premises in excess of such insurance proceeds within fifteen (15) days of receipt by Tenant of written notice from Landlord of its intention to terminate this Lease pursuant to this sentence. If the Premises are damaged or destroyed, Tenant shall have the option to terminate the term of this Lease within thirty (30) days of the date of such damage or destruction if the Premises (excluding the Garage) are rendered more than 50% unusable and the estimated restoration will require more than ninety (90) days.

10.4   End of Term.   Landlord shall not have any obligation to repair, reconstruct or restore the Premises during the last twelve months of the term of this Lease or any extension thereof, as a result of any damage to the Premises if the cost of such repair, reconstruction or restoration as reasonably estimated by the Landlord exceeds $100,000. If Landlord elects not to repair the Premises pursuant to this Section 10.4, Tenant may elect to terminate this Lease within fifteen (15) days of receipt of Landlord's notification of its election not to repair pursuant to this Section 10.4. If Tenant elects to terminate this Lease as provided in this Section, this Lease shall terminate fifteen (15) days following the election by Tenant to terminate this Lease. If Tenant does not elect to terminate this Lease within such fifteen (15) day period, the rent and other expenses payable by Tenant shall not abate, Landlord may repair the Premises at Tenant's cost and expense, and Tenant shall deposit with Landlord in advance

Exhibit 1                              Page 22

an amount estimated by Landlord as the cost of such repair.

## 11. CONDEMNATION.

11.1  The term of this Lease shall terminate as to the portion of the Premises taken or condemned by any authority under power of eminent domain or transferred by Landlord by agreement with such authority under threat of condemnation, with or without any condemnation action being instituted, as of the date such authority requests possession of such portion of the Premises.   The Annual Rental shall be adjusted in the proportion that the interior square footage of the portion of the Premises taken bears to the total interior square footage of the Premises prior to such taking.  Tenant shall not be entitled to any compensation, allowance, claim or offset of any kind against the Landlord or any condemning authority, of damages or otherwise, by reason of being deprived of the Premises or by the termination of this Lease, except that Tenant shall be entitled to such portion of any separate award for any improvements to the Premises paid for by Tenant in an amount not to exceed the unamortized cost of such improvements with such costs amortized over the term of this Lease without reference to any unexercised options.  Any portion of the Garage or exterior portion of the Premises taken by eminent domain or dedicated to public use shall upon such taking or dedication be excluded from the area over which Tenant is granted rights hereunder, and this Lease shall continue in full force and effect without any reduction in rental; provided however, that if less than four parking stalls remain after a taking, then the Annual Rental shall be reduced 5%.  If more than 20% of the usable floor area of the Premises (excluding the Garage) is taken, then Tenant shall have the option to terminate the Lease by delivery of written notice thereof within thirty (30) days of such taking.

## 12. ASSIGNMENT, SUBLETTING AND RECAPTURE.

12.1  Consent Required.  Tenant shall deliver to Landlord promptly following execution an executed copy of any assignment, sublease or agreement relating to the Premises, regardless of whether such sublease, assignment or agreement is permitted by this Lease or requires Landlord's consent.  Tenant shall not assign, sublease or otherwise transfer by  operation of law or otherwise this Lease or any interest herein without the prior written consent of Landlord, which consent shall not be unreasonably withheld.  If Tenant desires at any time to assign or otherwise transfer this Lease or sublease all or a portion of the Premises, it shall first notify Landlord of its desire to do so and shall submit in writing to Landlord (i) the name of the proposed assignee or sublessee, (ii) the nature of the proposed assignee's or sublessee's business to be carried on in the Premises, (iii) copy of the proposed assignment or sublease and any other agreements to be entered into concurrently with such assignment or sublease, and (iv) such financial information as Landlord may reasonably request concerning the proposed assignee or sublessee.  Landlord may condition its consent to any assignment or sublease on the execution by such assignee or sublessee of a written assumption by such assignee or sublessee of the obligations of Tenant under this Lease and upon Landlord's determination that (i) the proposed assignee or subtenant is financially responsible as a tenant, (ii) the proposed

**Exhibit 1**                                    **Page 23**

business on the Premises is reasonably acceptable to Landlord (and such business need not be limited to consular activities), and (iii) the rent payable by such subtenant is at the then current fair market rental for the portion of the Premises subleased. A transfer of control of Tenant shall be deemed an assignment of this Lease and shall be subject to all of the provisions of this Article. Tenant shall pay to Landlord $100 in reviewing such proposed assignment or sublease. Landlord shall respond to Tenant's request to assign or sublease this Lease within seven (7) days. This Lease may not be assigned or subleased without complying with the provisions of this Article in reliance on any law relating to bankruptcy or debtor's rights generally unless adequate assurance of future performance is provided Landlord including adequate assurance of the source of rent and other expenses due under this Lease for the entire term of this Lease and unless the assignee or sublessee and the proposed use of the Premises by the assignee or sublessee are consistent with the type of other tenants in the Premises and the use by such tenants of their Premises.

12.2   <u>Prohibitions.</u>   Any sale, assignment, encumbrance or other transfer of this Lease and any subleasing or occupation of the Premises which does not comply with the provisions of this Article shall be void and shall be a default under this Lease.

12.3   <u>Payments to Landlord.</u>   Tenant shall pay to Landlord promptly following receipt the amount by which the value of any consideration received by Tenant from any such assignment exceeds Tenant's unamortized cost of tenant improvements in the Premises. Tenant shall pay to Landlord promptly following receipt the amount by which all sublease rental and other payments received by Tenant from any subtenant or any other person occupying any portion of the Premises exceeds the total of the rental or other amounts payable by Tenant pursuant to Article 4 and Article 5 for the portion of the Premises subleased, with the rental or other amounts payable by Tenant for the Premises allocated on the basis of interior square footage. The provisions of this Section shall apply regardless of whether such assignment, subleasing or occupation is made in compliance with the terms of this Lease. Any payments made to Landlord pursuant to this Section, or Landlord's acceptance or endorsement thereof, shall not constitute a consent to any assignment, subleasing or occupation or cure any default under this Lease.

12.4   <u>Recapture.</u>   If Tenant requests Landlord's consent to any assignment or sublease of this Lease, Landlord shall have the right, to be exercised by giving written notice to Tenant within thirty (30) days of receipt by Landlord of the information concerning such assignment or sublease required by Section 12.1 to terminate this Lease effective as of the date Tenant proposes to Assign this Lease or sublease all or a portion of the Premises. On termination of this Lease by Landlord pursuant to this Section, Landlord shall pay to Tenant the unamortized cost of any tenant improvements to the Premises paid by Tenant, with such costs amortized over the term of this Lease without reference to any unexercised options. Landlord's right to terminate this Lease on assignment or sublease shall not terminate as a result of Landlord's consent to the assignment of this Lease or sublease of all or a portion of the Premises, or Landlord's failure to exercise this right with respect to an assignment or sublease.

reh\saw\lease
2-21-94

**Exhibit 1**                    **Page 24**

12.5   No Release.   Landlord's consent to any sale, assignment, encumbrance, subleasing, occupation or other transfer shall not release Tenant from any of Tenant's obligations hereunder or be deemed to be consent to any subsequent assignment, subleasing or occupation.   The collection or acceptance of rent or other payment by Landlord from any person other than Tenant shall not be deemed the acceptance of any assignee or subtenant as the tenant hereunder or a release of Tenant from any obligation under this Lease.   If any assignee, sublessee or successor of Tenant defaults in the performance of any obligations under this Lease, Landlord may proceed directly against Tenant without the necessity of exhausting any remedies against such assignee, sublessees or successors.   Landlord may consent to subsequent assignments or subleasing of this Lease or amendments or modifications of this Lease with the assignee, sublessees or successors of Tenant without notifying Tenant or such assignee, sublessee or successors and without obtaining their consent and such action shall not relieve Tenant or such assignee, sublessee or successors of any liability under this Lease.

13.   DEFAULT AND REMEDIES.

13.1   Events of Default.   The occurrence of any one or more of the following events shall constitute an event of Default (i) the failure by Tenant to make any payment of rent or any other payments required to be made by Tenant under this Lease when due if such failure continues for thirty (30) days after written notice by Landlord to Tenant of such failure; (ii) the failure by Tenant to observe or perform any of the provisions of this Lease to be observed or performed by the Tenant if such failure continues for a period of ten (10) days, or such other period if this Lease specifically provides a different period for a particular failure, after written notice by Landlord to Tenant of such failure; provided, however, that with respect to any failure which cannot reasonably be cured within ten (10) days, an Event of Default shall not be considered to have occurred if Tenant commences to cure such failure within such ten (10) day period and continues to proceed diligently with the cure of such failure; (iii) the failure by Tenant to pay its obligations as they become due; the making of any general assignment or general arrangement for the benefit of creditors by Tenant, or the filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under bankruptcy law or law affecting creditor's rights unless, in the case of a petition filed against Tenant, such petition is dismissed within sixty (60) days; the appointment of a trustee or a receiver to take possession of the Premises, where possession is not restored to Tenant within thirty (30) days or the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged in thirty (30) days; or (iv) Tenant transfers or agrees to transfer this Lease or possession of all or any portion of the Premises without Landlord's prior written consent.

13.2   Remedies.   On the occurrence of an Event of Default, Landlord may at any time thereafter, with or without notice or demand and without limiting Landlord in the exercise of a right or remedy which Landlord may have by reason of such default or breach, do the following:

rch\saw\lease
2-21-94

**Exhibit 1**                    **Page 25**

(i) Landlord may elect to continue the term of this Lease in full force and effect and not terminate Tenant's right to possession of the Premises, in which event Landlord shall have the right to enforce any rights and remedies granted by this Lease or by law against Tenant, including, without limitation, the right to collect when due rental or other sums payable hereunder.  Landlord shall not be deemed to have elected to terminate this Lease unless Landlord gives Tenant written notice of such election to terminate.  Landlord's acts of maintenance or preservation of the Premises or efforts to relet the Premises shall not terminate this Lease.

(ii) Landlord may elect by written notice to Tenant to terminate this Lease at any time after the occurrence of an Event of Default, and in such event Landlord may, at Landlord's option, declare this Lease and Tenant's right to possession of the Premises terminated, re-enter the Premises, remove Tenant's property therefrom and store it for Tenant's account and at Tenant's expense (but Landlord shall not be required to effect such removal), eject all persons from the Premises and recover damages from Tenant as hereinafter provided. Any such re-entry shall be permitted by Tenant without hindrance.  Landlord shall not thereby be liable in damages for such re-entry or be guilty of trespass, forcible entry or unlawful detainer.  If Landlord elects to so terminate this Lease and Tenant's right to possession or if this Lease and Tenant's right to possession are terminated by operation of law, such termination shall cancel all Tenant's options, if any, to extend or renew the term of this Lease.

(iii) Landlord may notify any subtenant of the Premises of the existence of an Event of Default by Tenant in writing and thereafter all rent or other amounts due from any subtenant of the Premises shall be paid to Landlord and Landlord shall apply such rent or other amounts in payment of the amounts due from Tenant under this Lease.  The delivery of such notice to any subtenant and the collection of such rent or other amounts by Landlord shall not terminate this Lease.

13.3   <u>Damages on Termination</u>.  On termination of this Lease by reason of Tenant's breach, Landlord may recover as damages from Tenant, in addition to all other remedies available, the worth at the time of award of the amount by which the unpaid rent and other sums payable by Tenant to Landlord which would have been earned after the date of termination of this Lease for the balance of the term of the Lease exceed the amount of such loss of rent and other sums for such period that Tenant proves could be reasonably avoided, all as provided in Section 1951.2 of the California Civil Code.  The "worth at the time of award" for the period prior to the time of award shall be 10% per annum and for the period after the time of award shall be the discount rate of the Federal Reserve Bank of San Francisco at the time of the award plus 1%.  On termination of this Lease by reason of Tenant's breach, Landlord may also recover as damages from Tenant that portion of any leasing commissions paid or payable by Landlord applicable to the unexpired term of this Lease and all costs incurred in releasing the Premises including advertising costs, the costs of refurbishment and alterations of the Premises and the cost of any concessions which the Landlord gives to release the Premises.  If Landlord releases the Premises following a termination by reason of Tenant's

rch\saw\lease
2-21-94

**Exhibit 1**                     **Page 26**

breach, the rent charged by Landlord on such releasing shall be deemed to be the rental value of the Premises for the purpose of calculation of the damages which Landlord may recover from Tenant.

13.4   Late Charge.   If Tenant fails to make any payment of rent, expenses or other amounts required of Tenant under this Lease within ten (10) days of the date such amount is due as set forth in this Lease, then, in addition to any other amounts recoverable by Landlord hereunder, Tenant shall pay Landlord a late charge in an amount equal to $0.01 for each dollar past due.  Such late charge shall be due notwithstanding the fact that no notice is given by Landlord to Tenant of such failure to pay.   Landlord and Tenant agree that it would be extremely difficult and impractical to fix the actual damages sustained by Landlord for such default and that the late charge set forth in this Section is a reasonable estimate of such damages at this time.  Landlord anticipates that such damage would include the administrative costs and expenses, the cost of arranging for borrowed funds and attorneys' fees.  The late charge provided in this Section shall be the sole damages which Landlord may recover from Tenant for the delay by Tenant in making any payment within ten (10) days from the date such payment is due (or on or before the date due, when and as provided above) until thirty (30) days after the date such payment is due, but this Section shall not limit Landlord's right to recover any other amount due pursuant to this Lease, Landlord's damages equivalent to the Amount of the rent or other payments if this Lease is terminated, Landlord's damages or costs for Tenant's failure to pay for a period beyond thirty (30) days from the date such payment is due, Landlord's cost and expense in connection with any litigation and Landlord's right to any other remedy such as terminating this Lease, recovering possession of the Premises or injunctive relief.

13.5   Past Due Obligations.   All amounts which Tenant is obligated to pay Landlord pursuant to this Lease or when due shall bear interest at the maximum interest rate chargeable by law, not to exceed seven percent (7%) per annum, from the due date until paid, unless otherwise specifically provided herein.   If a late charge is due with respect to such amount pursuant to Section 13.4, such interest shall commence to accrue thirty (30) days following the date such amount is due.  The payment of such interest shall not excuse or cure any default by Tenant under this Lease.

13.6   Non-Exclusive Remedies.   The remedies of Landlord set forth in this Article 13 shall not be exclusive, but shall be cumulative and in addition to all rights and remedies now or hereafter provided or allowed by law or equity, including, but not limited to, the right of Landlord to seek and obtain an injunction and the right of Landlord to damages in addition to those specified herein, except that the provisions of Section 13.4 shall limit Landlord's right to damages as specified therein.

14.   ADDITIONAL RIGHTS OF LANDLORD.

14.1   Entry by Landlord.   Landlord and its agents and employees shall have the right

reh\saw\lease
2-21-94                                              17

**Exhibit 1**                              **Page 27**

to enter the Premises at all times, to examine the same, to make such maintenance and repairs of the Premises and such maintenance, repairs, alterations, decorations, additions and improvements to the common area as Landlord requires and to show the Premises at reasonable times to prospective tenants during the last six (6) months of the term of this Lease. Landlord may erect, use and maintain pipes and conduits in and through the Premises provided such pipes and conduits do not detract from the appearance of the Premises. Landlord shall take reasonable precautions to minimize the disruption to Tenant of any entry to the Premises by Landlord as provided in this Section.

14.2 <u>Building Planning</u>. INTENTIONALLY DELETED

14.3 <u>Transfer by Landlord</u>. Landlord may transfer its interest in the Premises and this Lease without the consent of Tenant, at any time and from time to time. The obligations of Landlord pursuant to this Lease shall be binding upon Landlord and its successors only during their respective period of ownership except that Landlord and its successors shall be relieved of their obligation to refund security deposits and other funds to Tenant which they have received from Tenant or a predecessor Landlord only to the extent they transfer such amounts to their respective transferees.

14.4 <u>Default by Landlord</u>. Landlord shall not be liable to Tenant if Landlord is unable to fulfill any of its obligations under this Lease if Landlord is prevented, delayed or curtailed from so doing by reason of any cause beyond Landlord's reasonable control. Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord, specifying Landlord's failure to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance, then Landlord shall not be in default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes its efforts to satisfy such obligation. Any notice to Landlord by Tenant of Landlord's default under this Lease shall also be concurrently provided by registered or certified mail, to any holder of a mortgage or similar security instrument concerning the Premises, whose address shall have been furnished to Tenant ("Mortgagee Notice"). The Mortgagee's Notice shall offer such mortgagee a reasonable opportunity to cure the default, including the time to obtain possession of the Premises by power of sale or judicial foreclosure, if such action should be necessary to cure Landlord's default.

14.5 <u>Subordination</u>. This Lease is subject and subordinate to all mortgages and deeds of trust which now affect the Premises or any part of the Premises and to all renewals, modifications, consolidations, replacements and extensions thereof. This Lease may, at the option of Landlord, be subordinate to any mortgages, deeds of trust or other lien which may hereafter affect the Premises or any part thereof and Tenant will execute and deliver upon the demand of Landlord from time to time any and all instruments desired by Landlord, subordinating, in the manner requested by Landlord, this Lease to such mortgage, deed of trust

rch\saw\lease
2-21-94

**Exhibit 1**                    **Page 28**

or other lien, provided such mortgage, deed of trust or lien provides that in the event of the termination of such lease or foreclosure of such mortgage, deed of trust or lien, any successor to any interest of Landlord in the Premises will not disturb Tenant's possession of the Premises if Tenant attorns to such successor as Landlord and otherwise performs its obligations under this Lease. Tenant agrees that Tenant shall attorn to any purchaser upon foreclosure or sale pursuant to any lien. Landlord may from time to time grant or declare such restrictions or covenants as may be reasonably required by Landlord or adopt and record such parcel maps, subdivision maps or condominium plans as may be reasonably required by Landlord relating to all or any portion of the Premises and the provisions of such documents shall be senior to this Lease and Tenant shall sign any of such documents upon receipt of Landlord provided such documents do not unreasonably interfere with the use of the Premises by Tenant as permitted by this Lease.

14.6 <u>Lender's Rights</u>. On receipt of written request from Landlord, Tenant shall enter into a written agreement with Landlord and any holder of any encumbrance on the Premises in a term satisfactory to such holder which provides as follows: (i) Tenant shall attorn to such encumbrancer on foreclosure of its encumbrance, (ii) without the written approval of such encumbrancer, Tenant shall not make any payments to Landlord more than thirty (30) days prior to the date such payment is due pursuant to this Lease, Tenant shall not subordinate its interest in this Lease to any subsequent encumbrance and Landlord may not terminate this Lease or modify this Lease and (iii) any subordination, termination or modification in violation of such agreement shall be invalid.

14.7 <u>Estoppel Certificate</u>. Tenant shall upon ten (10) days written notice from Landlord execute, acknowledge and deliver to Landlord a statement in writing (i) certifying that this Lease is unmodified and in full force and effect or, if modified, stating the nature of such modifications and certifying that this Lease as so modified is in full force and effect, acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of the Landlord hereunder, or specifying such defects if any are claimed, (iii) setting forth the date of commencement of rents and the date of expiration of the term of this Lease and setting forth any options of Tenant to extend the term of this Lease, the nature of such options and whether any such options have been exercised by Tenant, and (iv) stating the amount of security deposit made by Tenant to Landlord and amount and period covered by any prepayments of rents or other charges by Tenant. Any such statement may be relied upon by any then existing or prospective lessor, purchaser or encumbrancer of all or any portion of the real property of which the Premises are a part.

14.8 <u>Financial Information</u>. INTENTIONALLY DELETED

15. <u>MISCELLANEOUS</u>.

15.1 <u>Brokers</u>. Tenant represents and warrants to Landlord that it has not had dealings with any broker or lender other than as listed in Section 1.14 hereof in locating the Premises

rch\saw\lease
2-21-94

19

**Exhibit 1**                    **Page 29**

and that it knows of no other person who is or might be entitled to a commission, finder's fee or other like payment in connection herewith and does hereby indemnify and agree to hold Landlord harmless from and against any and all claims, liabilities and expenses that Landlord may incur should such representation and warranty be incorrect. Landlord agrees to indemnify and hold Tenant harmless from any claims or liability to any broker or other person arising out of or relating to any agreement by Landlord to pay a brokerage commission, finder's fee or like payment to such broker or such person relating to the leasing of the Premises; provided, however, that Landlord shall not be obligated to Tenant for any claims or liability to any broker or other person with whom Tenant has dealing concerning the Premises whose identity Tenant has failed to disclose to Landlord as required by this Section 15.1.

15.2   Holding Over.   If Tenant, with or without Landlord's consent, remains in possession of the Premises or any part thereof after the expiration of the term hereof such occupancy shall be a tenancy from month to month upon all the provisions of this Lease, except that (a) the "Annual Rental" during such tenancy shall be and mean to a monthly rental payable in advance at two hundred percent (200%) of one twelfth of the Annual Rental for the last Lease Year of the term, and (b) all options and rights of first refusal, if any, granted under the term of this Lease shall be terminated and be of no further effect during such month-to-month tenancy.

15.3   Performance.   All payments to be made under this Lease shall be made without prior legal notice or demand unless otherwise provided herein, in legal currency of the United States of America.   Time is hereby made of the essence of each and every one and all of the terms, covenants and conditions to be kept, observed or performed under this Lease.

15.4   Notices.   Any notices required or permitted to be given under this Lease shall be in writing and may be delivered personally or by certified mail to the Landlord at the address set forth in Section 1.1 and to Tenant at the address set forth in Section 1.2 and to such other parties at such addresses as Landlord requests in writing.   Any notice given by mail shall be deemed received two (2) business days following the date such notice and the required copies are mailed as provided in this Section.   Either party may change its address to another location within the United States for purposes of this Section by giving the other party written notice of the new address in the manner set forth above.   Any notice required by this Lease shall be deemed to constitute the notice required by Section 1161 of the California Code of Civil Procedure provided such notice otherwise complies with the requirements of such Section and Section 1162 of the California Code of Civil Procedure.

15.5   Merger.   There shall be no merger of this Lease or of the leasehold estate hereby created with the fee estate in the Premises or any part thereof by reason of the fact that the same person, firm, corporation or other legal entity may acquire or hold, directly or indirectly, this Lease or the leasehold estate and the fee estate in the Premises or any interest in such fee estate without the prior written consent of the holders of any mortgages or similar security instruments covering the leased Premises.

reh\saw\lease
2-21-94

Exhibit 1                    Page 30

15.6  <u>Termination</u>.  On termination of the Lease, Tenant shall execute and deliver to Landlord immediately upon Landlord's request a quitclaim deed in recordable form transferring to Landlord any interest of Tenant in the Premises.

15.7  <u>Applicable Laws</u>.  This Lease shall be governed by and construed in accordance with the laws of the State of California applicable to leases made and to be performed in that State.

15.8  <u>Professional Fees</u>.  If Tenant or Landlord brings any action for any damages or other relief against the other or for a declaration or determination of any matter relating to this Lease, including a suit by Landlord for the recovery of rent or other payments from Tenant or for possession of the Premises, the losing party shall pay to the prevailing party costs of suit and reasonable attorneys' fees in such suit, and such obligation shall be incurred on commencement of any action whether or not such action is prosecuted to judgment or final determination.

15.9  <u>Modification</u>.  This Lease and any other written agreements dated as of the date of this Lease contain all of the terms and conditions agreed upon by the Landlord and Tenant with respect to the Premises.  All prior negotiations, correspondence and agreements are superseded by this Lease and any other contemporaneous documents.  No officer or employee of any party has any authority to make any representation or promise not contained in this Lease and other contemporaneous documents, and each of the parties hereto agrees that it has not executed this Lease in reliance upon any representation or promise not set forth in this Lease or such contemporaneous documents.  This Lease may not be modified or changed except by written instrument signed by Landlord and Tenant.  Notwithstanding the foregoing, if, in connection with obtaining construction, interim or permanent financing for the Premises, the lender shall request reasonable modifications in this Lease as a condition to such financing, Tenant shall not unreasonably withhold, delay or defer its consent therefor, provided that such modifications do not increase the obligations of Tenant hereunder or materially adversely affect the leasehold interest hereby created or Tenant's rights hereunder.

15.10  <u>Relationship of Parties</u>.  Neither the method of computation of rent nor any other provisions contained in this Lease nor any acts of the parties shall be deemed or construed by the parties or by any third person to create the relationship of principal and agent or of partnership or of joint venture or of any association between Landlord and Tenant, other than the relationship of landlord and tenant.

15.11  <u>Waiver</u>.  The acceptance of rent or other payments by Landlord, or the endorsement or statement on any check or any letter accompanying any check for rent or other payment shall not be deemed an accord or satisfaction or a waiver of any obligation of Tenant regardless of whether Landlord has knowledge of any breach of such obligation.  Failure to insist on compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any

rch\saw\lease
2-21-94

**Exhibit 1**                    **Page 31**

right or power hereunder, at any one time or more times, be deemed a waiver or relinquishment of such rights and powers at any other time or times or under any other circumstance(s).

15.12   _Partial Invalidity_.   If any term or provision of this Lease or the application thereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Lease shall be valid and enforced to the fullest extent permitted by Law.

15.13   _Interpretations._   Any uncertainty or ambiguity existing herein shall not be interpreted against either party because such party prepared any portion of this Lease, but shall be interpreted according to the application of rules of interpretation of contracts generally.

15.14   _Successors and Assigns_.   This Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted heirs, representatives, successors and assigns.

15.15   _Tenant as Partnership_.   INTENTIONALLY DELETED

15.16   _Tenant as Corporation_.   INTENTIONALLY DELETED

15.17   _Exhibits._   All exhibits, riders and schedules, if any, attached hereto shall be deemed a part of this Lease.

15.18   _Amendments; No Representations._   No prior agreement or understanding pertaining to any such matter shall be effective.  This Lease may be modified in writing only, signed by the parties in interest at the time of the modification.  Tenant hereby acknowledges that  neither Landlord nor any Landlord employees or agents has made any oral or written warranties or representations to Tenant relative to the this Lease or the Premises and Tenant acknowledges that Tenant assumes all responsibility regarding the suitability of the Premises for the conduct of Tenant's business.

16.   _ADA_.   Landlord and Tenant hereby agree to allocate and be responsible for duties and liabilities under the Americans With Disabilities Act, as amended from time to time ("ADA") with respect to the Premises as set forth in this Section.  All quoted terms shall have the meaning set forth in the ADA.  Tenant shall immediately notify Landlord at such time as Tenant is or becomes a "public accomodator" with respect to the Premises ("Notice").  Upon receipt of Notice, Landlord shall comply with the Subchapter III of the ADA with respect to providing access to the exterior portions of the Premises to the extent such compliance is "readily achievable", and except for Major Accommodations (defined below).  Tenant shall comply with the all other obligations and aspects of the ADA, including without limitation: (i)

**Exhibit 1**                                    **Page 32**

the interior portions of the Premises, (ii) the exterior portions of the Premises as a result of changes from Tenant's initial use of the Premises, (iii) all provisions of the ADA not relating to the facilities of public accommodation, including without limitation, ADA Subchapters I and II, and (iv) any improvements or alterations costing in the aggregate in excess of $5,000 ("Major Accommodation").  Landlord and Tenant each indemnifies, defends, protects and holds harmless the other party and its owners, agents, employees and affiliates from any cost, loss or liability arising out of a breach of the indemnitor's obligations in this Section.

17.   Hazardous Materials Provisions.   Tenant shall neither cause nor permit the use, generation, storage, transportation, handling or disposal of Hazardous Materials in or about the Premises by Tenant or any of Tenant's employees, agents, contractors, sublessees, assignees, licensees, concessionaires and invitees ("Agents") at any time during the Term; and Tenant shall comply, and shall cause Agents to comply, with all laws, rules and regulations relating to such activities.   This covenant shall survive termination of this Lease.   "Hazardous Materials" means asbestos, any petroleum fuel and any hazardous or toxic substance, material or waste which is or becomes regulated by any local governmental authority, the State of California or the United States Government, including, but not limited to, any material or substance defined as a "hazardous substance," "hazardous material" or "toxic pollutant" under the California Health and Safety Code and/or under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *et seq.*, but specifically excluding general office supplies typically used in an office area in the ordinary course of business, such as copier toner, liquid paper, glue, ink, and cleaning solvents, for use in the manner for which they were designed, in such amounts as may be normal for the office business operations conducted by Tenant.

18.   Security and Indemnification.

18.1   Tenant acknowledges and agrees that in addition to the normal risks of criminal activity and torts against persons and property in the area of the Premises the nature and activities of Tenant may subject it to heightened risk of criminal activity and torts intentionally or unintentionally directed against the Premises, Tenant or its employees, contractors, agents, guests, invitees and others.  Landlord and Tenant expressly intend and hereby agree that all such risks are hereby allocated to Tenant.  Landlord shall have no obligation whatsoever to provide any security to the Premises, Tenant's property or such persons, and Landlord hereby disclaims any and all representations and warranties, express or implied, as to the security of the Premises or the safeness of the surrounding area, including without limitation security and alarm systems, locks, windows and doors and other potential entry points.  Landlord expressly disclaims any implied warranty of the use or fitness of the Premises intended by Tenant.

18.2   Tenant indemnifies, protects, defends and holds harmless Landlord and its officers, directors, agents, employees and shareholders from any and all loss, damage, liability cost or claim of Tenant or any third party arising from or in connection with (i) the nature of Tenant or its occupancy or business or political activities; (ii) the intentional, willful or negligent acts

reh\saw\lease
2-21-94

23

**Exhibit 1**                **Page 33**

of third parties acting against Tenant or in connection with demonstrations, ware or riots or other political purposes; or (iii) the risks described in Subsection 18.1. Notwithstanding any provision in this Lease providing that Landlord shall pay for certain costs, such indemnification shall include without limitation: (a) the cost of any increase in premiums for insurance obtained by Landlord pursuant to Section 9.1; (b) the cost of repairs and maintenance to the Premises; and (c) the cost, in excess of insurance proceeds, of repairing or replacing any damage or destruction to the Premises.

IN WITNESS WHEREOF, the parties hereto hereby execute this Lease as of the day and year first above written.

LANDLORD:                          Sawtelle Courtyard Partners, L.P., a Delaware limited partnership

By:    Sawtelle Properties, Inc., a California corporation, general partner


By: _____
        Vahe M. Melkonian, President

Date: _____June 24, 1994_____

TENANT:                            THE ROYAL CONSULATE OF SAUDI ARABIA


By: _____
        Ambassador Hassan T. Nazer, Consul
        General of Saudi Arabia - Los Angeles

Date: _____Jan 23.1995_____

24

Exhibit 1                          Page 34

Exhibit A

FLOOR PLAN OF PREMISES

Refer to approved plans dated 18 February, 1994, prepared by J.D.O. and Associates, Woodland Hills, California.

**Exhibit 1**                    **Page 35**

Exhibit B

## RULES AND REGULATIONS

Landlord reserves the right at any time to amend, add to or delete any of these Rules and Regulations. Any conflict between these Rules and Regulations and the Lease shall be construed in favor of the Lease.

1.    The common areas and roof are not for the use of the general public and Landlord shall in all cases retain the right to control and prevent access thereto by all persons whose presence in the judgment of Landlord may be prejudicial to the safety, character, reputation or best interests of the Premises, provided that nothing herein contained shall be construed to prevent such access to persons with whom Tenant normally deals in the ordinary course of Tenant's business unless such persons are engaged in illegal activities. No Tenant and no employees or invitees of any Tenant shall go upon the roof of the Premises without the permission from Landlord.

2.    Tenant shall not alter any lock or install any new or additional locks or any bolts on any door of the Premises without permission of Landlord, unless such locks are part of an overall security management program previously approved by Landlord.

3.    The toilet rooms urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, no foreign substance of any kind whatsoever shall be thrown therein, and the expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose employees or invitees, caused it.

4.    Landlord shall have the right to prescribe the weight, size and position of safes and other heavy equipment brought into the Premises and also the times and manner moving the same in
and out of the Premises. Safes or other heavy objects shall, if considered necessary by Tenant, stand on wood strips of such thickness as is necessary to properly distribute the weight. Landlord will not be responsible for loss of or damage to any such safe or property from any cause and all damage done to the Premises by moving or maintaining any such safe or other property shall be repaired at the expense of Tenant.

5.    Except with the written consent of Landlord, no person or persons other than those approved by Landlord shall be permitted to enter the Premises for the purpose of cleaning the same. Tenant shall not cause any unnecessary labor by reason of Tenant's carelessness or indifference in the preservation of good order and cleanliness. Landlord shall in no way be responsible to Tenant for any loss of property on the Premises, however occurring, or for any damage done to the effects of Tenant by the janitor or any other employee or any other person. Janitor service shall include ordinary dusting and cleaning by the janitor assigned to such work

rch\saw\lease
2-21-94

**Exhibit 1**                    **Page 36**